UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY FANTIGROSSI,

                        Plaintiff,                        Case # 13-CV-6220-FPG

v.                                                                               DECISION AND ORDER

AMERICAN EAGLE AIRLINES, INC.,

                        Defendant.
_____

       Plaintiff Anthony Fantigrossi ("Fantigrossi") alleges that he was the victim of reverse-race discrimination when his former employer, Defendant American Eagle Airlines, Inc. ("AEA"), terminated him in violation of Title VII of the Civil Rights Act of 1964. ECF No. 1. AEA has moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that any potential claim that Fantigrossi had against AEA was extinguished through Chapter 11 bankruptcy proceedings filed by AEA and its parent corporation, AMR Corporation ("AMR"). ECF No. 10. Because Fantigrossi failed to file a proof of claim in that bankruptcy proceeding, his claim was indeed extinguished by the bankruptcy proceedings, and this action must be dismissed.

## BACKGROUND[1]

       Anthony Fantigrossi is a Caucasian male who began working for AEA in March 2010 as a station agent at the Greater Rochester International Airport. In June 2011, Fantigrossi was sitting with two African-American colleagues in the company breakroom and was using his

---

[1] The facts are taken from Plaintiff's Complaint (ECF No. 1) and are assumed to be true in judging the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In addition, the Court takes judicial notice of filings in the bankruptcy matter at issue from the Southern District of New York, *In re AMR Corp.*, No. 11-15463-SHL. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

laptop computer. One of these colleagues asked Fantigrossi if he had watched any of Katt Williams' comedy routines. Fantigrossi said that he had not, so the colleague used Fantigrossi's laptop to search the internet for one of Williams' routines, and then played the episode. While Fantigrossi and the two colleagues were watching the episode, AEA's compliance coordinator, Jennifer Winslow, entered the break room. Winslow heard racial slurs on the comedy routine, and complained to Fantigrossi and his colleagues that such language was inappropriate. Fantigrossi then took the laptop from his colleague and stopped the video.

Approximately five months later, on November 18, 2011, Fantigrossi was called into General Manager Kathy Rice's office at AEA and was instructed to prepare a written report about the breakroom incident. Fantigrossi asked Rice if his colleagues were also being questioned about the breakroom incident, and Rice indicated they were not. Rice then terminated Fantigrossi's employment with AEA.

Fantigrossi filed a grievance with AEA regarding his termination, where he included written statements from the two colleagues who were with him during the breakroom incident. On December 9, 2011, AEA heard Fantigrossi's grievance, and upheld his termination. Fantigrossi alleges that his two African-American colleagues were not terminated, nor were they disciplined at all as a result of the breakroom incident.

On November 29, 2011, AEA and its parent company AMR filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. That action was filed in the Southern District of New York, and was assigned to United States Bankruptcy Judge Sean H. Lane. *See In re AMR Corp.*, No. 11-15463-SHL (Bankr. S.D.N.Y.). The bankruptcy action received national publicity, presumably because it involved one of the largest airlines in the United States, American Airlines, Inc. The bankruptcy action was enormously complex and, as of today, it

comprises some 12,832 docket entries. *Id.* However, in addition to the filing date, only a few key events in the bankruptcy action are relevant to this matter.

On May 4, 2012, the bankruptcy court entered what is commonly known as a "Bar Date Order." That Order set July 16, 2012 as the deadline for any person or entity to file a claim against AMR for any claim that arose prior to the filing of AMR's bankruptcy petition on November 29, 2011. *See In re AMR Corp.*, No. 11-15463-SHL, ECF No. 2609 (Bankr. S.D.N.Y. May 4, 2012).

This case was commenced on April 29, 2013, but was automatically stayed under 11 U.S.C. § 362(a) due to the pending bankruptcy action.

On October 22, 2013, the bankruptcy court confirmed AMR's reorganization plan, effective December 9, 2013. *In re AMR Corp.*, No. 11-15463-SHL, ECF No. 10367 (Bankr. S.D.N.Y. Oct. 22, 2013).

On April 2, 2014, the Court granted Fantigrossi's request to proceed with this case, and set a date for AEA to respond to the Complaint. ECF No. 7.

In his Complaint, Fantigrossi alleges that his termination was a form of reverse-race discrimination in violation of Title VII of the Civil Rights Act of 1964, and he seeks damages from AEA. In response, AEA has moved to dismiss the Complaint. ECF No. 10. That application is fully briefed, and the Court deems oral argument unnecessary.

## DISCUSSION

To succeed on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a defendant must show that the complaint fails to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A complaint is plausible when a plaintiff pleads sufficient facts that allow the Court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a

3

probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations … a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

The premise behind AEA's Motion to Dismiss is straightforward. AEA argues that because Fantigrossi did not file a proof of claim in the Chapter 11 proceedings, any potential claim against AEA was extinguished by the bankruptcy court.

The general premise advanced by AEA is undisputed. Under Section 1141 of the Bankruptcy Code, a bankruptcy court's confirmation of a reorganization plan discharges the debtor from any debt that arose before the date of the confirmation, regardless of whether proof of the debt is filed, the claim is disallowed, or the plan is accepted by the holder of the claim. 11 U.S.C. § 1141(d)(1)(A); *Cost v. Super Media,* 482 B.R. 857, 861 (S.D.N.Y. 2012). The term "debt" means "liability on a claim," and a "claim" includes any "right to payment, whether or not such right is reduced to judgment … disputed, legal, equitable, secured, or unsecured." 11 U.S.C. §§ 1010(5)A, (12). In general, "employment discrimination claims that arise before the

4

effective date of the confirmation of a reorganization plan under § 1141 are discharged by the effectuation of the plan." *Cost,* 482 B.R. at 861.

Here, the bankruptcy court's Confirmation Order discharged and released AMR from all debts and claims that existed before December 9, 2013, the effective date of the reorganization plan. *See In re AMR Corp.*, No. 11-15463-SHL, ECF No. 10367 (Bankr. S.D.N.Y. October 22, 2013). The applicability of the Confirmation Order to Fantigrossi's claims depends on whether the claims arose prior to the plan's effective date. "A claim arises, for the purposes of discharge in bankruptcy cases, at the time of the events giving rise to the claim, not at the time plaintiff is first able to file suit on the claim." *Cost,* 482 B.R. at 862. To determine whether Fantigrossi's claim arose before the date of the bankruptcy plan's confirmation, the Court looks to the relevant non-bankruptcy law that provides the basis for the underlying claim. *Id.* In employment discrimination cases, a claim arises on the date that the employee learns of the employer's discriminatory conduct. *Flaherty v. Metromail Corp,* 235 F.3d 133, 137 (2d Cir. 2000).

In response to AEA's Motion to Dismiss, Fantigrossi does not argue that he was unaware of the bankruptcy proceeding, nor does he argue that he filed a claim with the bankruptcy court. Rather, he advances two separate reasons why his claims are not precluded by the confirmation of AEA's bankruptcy plan. First, he argues that his termination date places him outside of the bankruptcy court's purview, and second, he argues that his claim is not dischargeable as a matter of law under the bankruptcy code.

I. AEA's Termination of Fantigrossi

Fantigrossi argues that his Complaint "very clearly pled" that his termination occurred on December 9, 2011. *See* ECF No. 16, at 3. Based on that, Fantigrossi essentially argues that AEA's bankruptcy proceeding cannot preclude this case, since his termination occurred after AEA filed for bankruptcy on November 29, 2011.

First, Fantigrossi's argument misstates the allegations of his Complaint. The Complaint clearly alleges that on November 18, 2011, Fantigrossi was called into General Manager Kathy Rice's office at AEA and was instructed to prepare a written report about the breakroom incident. It also alleges that Fantigrossi then asked Rice if his colleagues were also being questioned about the breakroom incident, that Rice indicated they were not, and that Rice then terminated Fantigrossi's employment with AEA. ECF No. 1, ¶¶ 17, 18, 19. Fantigrossi then alleges that on December 9, 2011, AEA heard the grievance "he had submitted concerning his termination." *Id.* at ¶ 20.

Nowhere in the Complaint does Fantigrossi allege that his termination did not occur until December 9, 2011. Rather, Fantigrossi alleges that on December 9, 2011 his grievance "concerning his termination" was heard by AEA. In other words, Fantigrossi's termination must have occurred sufficiently before December 9, 2011, such that Fantigrossi had time to file a grievance, submit documents in support of his grievance, and have a hearing scheduled for December 9, 2011. Contrary to his argument, Fantigrossi's Complaint clearly alleges that AEA terminated his employment on November 18, 2011.

Second, to the extent Fantigrossi is suggesting that AEA's grievance procedure extends his claim accrual date, he is incorrect. "[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 257 (1980) (citation omitted). In other words, the existence of a grievance procedure in no way suggests that a decision to terminate is tentative. "The grievance procedure, by its very nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Id.* (emphasis in original). As a result, it does not matter that Fantigrossi grieved his termination or that he attended a grievance hearing on December 9, 2011.

Third, even if the Court accepted Fantigrossi's argument that his termination did not occur until December 9, 2011, his claim was still discharged by the bankruptcy court's Confirmation Order. The Confirmation Order specifically discharged all claims that arose prior to December 9, 2013, the date the bankruptcy plan was confirmed, which is standard practice in bankruptcy actions. *See In re AMR Corp.*, No. 11-15463-SHL, ECF No. 10367 (Bankr. S.D.N.Y. Oct. 22, 2013); *see also In re Worldcom, Inc.* 546 F.3d 211, 216 (2d Cir. 2008) ("Confirmation of a plan of reorganization discharges the debtor from any debt that arouse before the date of such confirmation.")

For all of these reasons, the Court finds that Fantigrossi's arguments regarding the date of his termination are meritless.

Additionally, Fantigrossi asks the Court to take judicial notice "of the fact that 'American Eagle Airlines, Inc.' was NOT contained in the caption listing it as the party filing for Chapter 11 Bankruptcy." ECF No 16, at 5 (emphasis in original). Fantigrossi does not explain why this distinction is relevant, but the Court assumes that he is suggesting that the AMR bankruptcy proceeding did not affect his former employer, AEA.

This argument is meritless. Attached to Fantigrossi's response to the Motion to Dismiss is a "Notice of Deadlines for Filing Proofs of Claim" from the AMR bankruptcy action, which bears the caption "In re AMR Corporation, *et al.*, Debtors." ECF No. 16-3, at 2. Immediately below that caption, the document is addressed "to all persons and entities with claims against any of the debtors set forth below," and then displays a chart with the names of twenty debtors, their tax identification numbers, and any "other names used by debtor in the past eight years." *Id.* Notably, "American Eagle Airlines, Inc." is the eighth entity on the list, and the names "American Eagle" or "American Eagle Airlines" appear three additional times in the chart as an alternative name used by the debtors. *Id.* Simply put, the record flatly contradicts Fantigrossi's

7

suggestion that the bankruptcy court's notice failed to identify American Eagle Airlines, Inc. as a party to that proceeding, and Fantigrossi's argument to the contrary is meritless.

II.   Section 523(a)(6) Exception to Discharge

Fantigrossi also argues that his claim against his former employer is non-dischargeable under 11 U.S.C. § 523(a)(6) because he has alleged willful and malicious conduct by AEA.[2] That section of that bankruptcy code provides that a discharge "does not discharge an individual debtor from any debt…for willful and malicious injury by the debtor to another entity."  Of course, AEA is a corporation.  The key question before the Court then is whether the term "individual" or "individual debtor" includes corporate entities.

For over a century, the Supreme Court has held in several contexts that corporate entities can be a "person" (which is generally synonymous with "individual") when interpreting federal law.  *See, e.g., Gulf, C. & S.F. Ry. Co. v. Ellis*, 165 U.S. 150, 154 (1897) ("It is well settled that corporations are persons within the provisions of the fourteenth amendment of the constitution of the United States."); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 700 (1978) (municipal corporations are "persons" for purposes of the Civil Rights Act of 1871, 42 U.S.C. § 1983).  But those decisions all arose in the context of interpreting a specific provision of the Constitution or the relevant statute, and they do not resolve the question under the statute at issue here.

"In any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, --- U.S. ----, 133 S.Ct.

---

[2]   Fantigrossi's Complaint alleges simply that "the unlawful employment practices complained of herein-above (sic), were intentional… [and]…were done with malice…" ECF No. 1, at ¶¶ 26, 27.  There are no facts alleged to support these allegations, and these statements are insufficient because "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The Court nevertheless addresses the applicability of § 523(a)(6) because, as will be shown, the inapplicability of that section means that this pleading deficiency is incurable.

1886, 1893 (2013) (citation and quotation omitted).  "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008).

The bankruptcy code does not define "individual" or "individual debtor."  So the Court starts with the Dictionary Act, 1 U.S.C. § 1, which must be consulted "in determining the meaning of any Act of Congress, unless the context indicates otherwise."  Neither "individual" nor "individual debtor" are separately defined under the Act.  However, the Act does define "person" to "include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as *individuals*." (emphasis added).

The ordinary meaning of "individual" also does not resolve this question.  Webster's dictionary offers several definitions of "individual," including the unhelpful "of, relating to, or distinctively associated with an individual," but also defines it as "existing as a distinct entity."  Black's Law Dictionary defines "individual" as "a single person as distinguished from a group or class, and also, very commonly, a private or natural person as distinguished from a partnership, corporation, or association."  However, it also cautions that the definition "may, in proper cases, include artificial persons."

So the question remains: is a corporation an "individual" for purposes of § 523(a)(6)?

The problem with interpreting "individual" in this context to include corporations is that it reads the word "individual" out of the text, making it superfluous.  In interpreting the statute, the Court must read the text "to give effect, if possible, to every clause and word of a statute." *In re Barnet*, 737 F.3d 238, 246-47 (2d Cir. 2013) (citation and quotation omitted).  To do that, the word "individual" in § 523(a) can only be read to modify "debtor."  If Congress intended for corporations to be covered under the § 523(a) exceptions, it would not have included the word

9

"individual;" it would have simply used the more general term "debtor."  When Congress elected to use the specific modifier of "individual" when referring to debtors, they clearly evinced their intent to exclude corporate debtors from § 523(a).  As a result, the Court concludes[3] that the § 523(a)(6) exemption does not apply to corporations, and that Fantigrossi's argument therefore fails.

## CONCLUSION

Fantigrossi's potential claim against AEA regarding his termination was discharged by the bankruptcy court's Confirmation Order, and he cannot resurrect his claim in this proceeding.  As a result, AEA's Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) (ECF No. 10) is GRANTED, and this case is DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED:   Rochester, New York
         February 28, 2017

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[3] The Court's conclusion is also consistent with the few courts that have interpreted section 523(a)(6) in the context of corporate debtors.  *See In re Automatic Bridgeport, Inc.*, 202 B.R. 540, 542 (D. Conn. 1996); *In re MF Global Holdings, Ltd., et al.*, No. 11-15059(MG), 2012 WL 734175, at *3 (S.D.N.Y. Mar. 6, 2012); *Mohammed v. Great Atl. & Pac. Tea Co., Inc.*, No. 13 CIV. 2248, 2014 WL 4058708, at *4 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 607 F. App'x 77 (2d Cir. 2015).